UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK S.,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br>　　　　　　　　　　Defendant. | Case No.: 21-cv-01074-JLB<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 11; 13]** |

On June 8, 2021, Plaintiff Frank S. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability and disability insurance benefits. (ECF No. 1.)

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment and replies.[1] After a careful review and for the reasons set forth

---

[1] The Court notes that Plaintiff was to file a merits brief rather than a motion for summary judgment. CivLR 7.1(e)(6)(e). Likewise, the Commissioner was to file only an opposition to Plaintiff's merits brief. *Id.* No other motions were required to be filed for the Court to dispose of the case on its merits. *Id.*

1

below, the Court **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 11) and **GRANTS** the Commissioner's Cross-Motion for Summary Judgment (ECF No. 13).[2]

## I.     PROCEDURAL BACKGROUND

On March 10, 2020, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning February 28, 2018. (Certified Administrative Record ("AR") 179–80.) After his application was denied initially and upon reconsideration (AR 91–95, 97–102), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 103–04.) An administrative hearing was held on February 1, 2021. (AR 31–66.) Plaintiff appeared at the hearing with counsel, and testimony was taken from him, as well as from a vocational expert ("VE"). (AR 31–66.)

As reflected in his February 26, 2021, hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from February 28, 2018, through the date of decision. (AR 7–25.) The ALJ's decision became the final decision of the Commissioner on April 9, 2021, when the Appeals Council denied Plaintiff's request for review. (AR 1–6.) This timely civil action followed. (*See* ECF No. 1.)

## II.     SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 28, 2018, the alleged onset date.[3] (AR 12.)

---

[2]     The parties have expressly consented that all proceedings in this case may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 646(c); Fed. R. Civ. P. 73; ECF No. 5.

[3]     At the hearing, Plaintiff amended his alleged onset date to March 15, 2019. (AR 10.) However, the ALJ used Plaintiff's original alleged onset date of February 28, 2018 in his decision. (AR 22.)

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the left knee, status-post surgery. (AR 13.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 17.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work" with the following limitations: "he could never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch and crawl. Additionally, he would need to avoid all work around unprotected heights." (AR 17.)

At step four, based on Plaintiff's RFC and while relying on the VE's testimony, the ALJ determined that Plaintiff is capable of performing past relevant work as pharmacy technician and as a security guard. (AR 21.) Accordingly, without reaching step five, the ALJ found that Plaintiff was not disabled under the law from February 28, 2022, through the date of decision. (AR 22.)

### III.   PLAINTIFF'S CLAIM OF ERROR

As reflected in Plaintiff's motion for summary judgment, the disputed issue that Plaintiff is raising as the ground for reversal and/or remand is as follows: whether the ALJ's RFC assessment lacks the support of substantial evidence because the ALJ "failed to properly evaluate the medical evidence of record." (ECF No. 11 at 8–12.)[4]

### IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and

---

[4]   Plaintiff included a second issue in his merit's brief: whether the final decision of the Commissioner arose from an unconstitutional administrative process. (ECF No. 11 at 5–8.) On August 12, 2022, Plaintiff withdrew this issue. (ECF No. 17.) Therefore, the Court does not address this issue.

whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575–76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529–30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). In reaching his findings, the ALJ is entitled to draw inferences which logically flow from the evidence. *Id.*

## V.   DISCUSSION

As stated above, the sole issue in dispute in this case is whether the ALJ's RFC assessment is supported by substantial evidence. (ECF No. 11 at 8–12.) Specifically, as to his physical RFC, Plaintiff asserts the ALJ's RFC assessment erroneously failed to account for his use of a cane. (*Id.* at 9–10.) Second, as to his mental RFC, Plaintiff asserts that because the ALJ found that he had mild mental limitations in interacting with others and in concentration, persistence or pace at step two, it was error for the ALJ not to include these limitations in any of the hypotheticals posed to the VE. (*Id.* at 10–11.) Thus, Plaintiff argues that this Court should reverse the Commissioner's decision because "the presence of the mild mental limitations may eliminate his past work," contrary to the ALJ's decision at step four. (*Id.* at 11–12.) The Court addresses each of Plaintiff's arguments in turn below.

### A.   Legal Standard

The RFC is used at step four to decide if a claimant can do past relevant work. 20 C.F.R. § 404.1545(5)(i). A claimant's RFC "is the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) ("The RFC is an administrative assessment of the extent to

which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.") The ALJ is "responsible for assessing [the RFC]." 20 C.F.R. § 404.1546(c). The ALJ must determine a claimant's RFC "based on all of the relevant medical and other evidence," and will consider "any statements about what [the claimant] can still do that have been provided by medical sources" and "descriptions and observations of [the claimant's] limitations" provided by the plaintiff and other non-medical sources. 20 C.F.R. § 404.1545(3); *Laborin*, 867 F.3d at 1153.

## B. Plaintiff's Physical RFC

### 1. Applicable Law

The ALJ is required to consider all limitations and restrictions imposed by all impairments, even those deemed not severe, at the later steps of the sequential evaluation process. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (requiring ALJ's RFC assessment to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). The use of a hand-held assistive device such as a cane is a functional limitation only if it is medically required. *See* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996); *Quintero v. Colvin*, No. 13-00478, 2014 WL 4968269, at *10 (E.D. Cal. Sept. 29, 2014) ("The use of a cane or other 'hand-held assistive device' is probative of a claimant's functional limitations only if it is medically required."). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7.

A claimant's own testimony does not constitute required medical documentation establishing the need for an assistive device. *See Marin v. Astrue*, No. 11-09331, 2012 WL 5381374, at *4 (C.D. Cal. Oct. 31, 2012) (finding ALJ "justifiably concluded that

plaintiff's use of a cane did not warrant a more limited RFC" where only plaintiff's own testimony corroborated her use of a cane). Nor does the fact that various medical providers noted plaintiff's use of a cane establish its medical necessity. *See Cashin v. Astrue*, No. 09-161, 2010 WL 749884, at *11 (C.D. Cal. Feb. 24, 2010) (finding physician's observation of claimant's use of cane during examination was not "an objective finding that plaintiff's cane was medically required"); *Quintero*, 2014 WL 4968269, at *10 ("Mentioning the use of a cane [in physicians' treatment notes] neither established Plaintiff needed the cane to balance or walk, nor described the circumstances for which the cane would be needed."); *Flores v. Colvin*, No. 14-02096, 2016 WL 2743228, at *14 (E.D. Cal. May 11, 2016) (finding "no medical documentation establishing the need for an assistive device" where all mentions of claimant's cane were "traceable to Plaintiff's self-reports and to his medical sources' observations that he presented with an assistive device"). Without a physician "describing the circumstances for which [the cane] is needed," the ALJ cannot find the cane medically necessary. SSR 96-9p, 1996 WL 374185 at *7; *see also Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (noting that courts "have required an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary"); *Hughes v. Berryhill*, No. 17-01983, 2017 WL 4854112, at *14–15 (S.D.W. Va. Oct. 4, 2017) (affirming ALJ's finding that assistive device was not medically required where record contained prescription but no explanatory information describing when device was needed); *Carroll v. Colvin*, No. 14-173, 2015 WL 5737625, at *13–14 (E.D.N.C. Sept. 30, 2015) (finding "no documentation in the record" explaining circumstances in which claimant needed assistive device where physicians circled "yes" and indicated type of ambulatory device in response to inquiry about claimant requiring device).

2. Analysis

The record does not support Plaintiff's cane being medically required under SSR 96-9p. During the hearing, Plaintiff's counsel questioned Plaintiff about his use of a cane and Plaintiff testified that he had the cane with him for 70 to 80 percent of his day. (AR 52.)

Plaintiff further testified that even with the use of the cane, he could not walk more than five minutes before needing to sit down. (AR 52.) In his Adult Function Report from April 12, 2020, Plaintiff reported using a cane at all times and indicated that he was prescribed a cane in 1998. (AR 235.) In Plaintiff's Adult Function Report from April 20, 2020, he reported use of a cane with no additional details. (AR 252.) However, Plaintiff's own testimony does not constitute required medical documentation establishing the need for an assistive device. *Marin*, 2012 WL 5381374, at *4. In support of his argument, Plaintiff also asserts that he is a fall risk and cites to evidence in the record of two past falls, none of which mention the use of a cane, any assistive device, or his knee injury. (AR 288–289, 353, 406.) Plaintiff's fall in January 2020 was unrelated to his knee injury. Rather, it was a syncopal episode that occurred as a result of not eating that day and drinking a beer. (AR 412–414.) Although Plaintiff was described as a "fall risk" during his post fall evaluation, the progress notes also reflected that Plaintiff "ambulates with a steady gait." (AR 413.) Further, the progress notes detailing Plaintiff's falls do not indicate any need for a cane or other assistive device. Therefore, the Court finds this unpersuasive as evidence that a cane was medically required.

      Plaintiff testified at his hearing in February 2021 that the VA hospital prescribed the cane approximately five years prior. (AR 51–52.) Notably, this testimony is inconsistent with his statement in his Adult Function Report from April 2020 that a cane was prescribed to him in 1998. (AR 235.) More significant than this inconsistency, however, is the fact that there is no medical documentation in the record to verify a cane prescription or to establish Plaintiff's need for a cane or any other assistive device. Although Plaintiff cites to a Health Information Technology Medical Report from Veteran Affairs that indicates that he used a cane (AR 318, 322, 378, 385), the report does not state that a cane was medically required or describe the circumstances in which a cane was needed. Moreover, in the Disability Determination Explanation Reports completed by Dr. S. Lee, M.D., and Dr. R. Paxton, M.D., neither doctor indicated that a cane was medically required. Instead, Dr. Lee and Dr. Paxton merely acknowledged that Plaintiff uses a cane. (AR 68, 71, 82.)

The doctors did not state the circumstances under which Plaintiff needed the cane for ambulation, such as all the time, periodically, or only in certain situations. Thus, Dr. Lee and Dr. Paxton's opinions did not establish that Plaintiff's use of a cane was medically required. *See* SSR 96-9p, 1996 WL 374185, at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).").

Additionally, Plaintiff argues that Dr. Lee (an ophthalmologist) and Dr. A. Wong, M.D. (a pediatrician) are not of "the appropriate specialties to address [Plaintiff's] severe impairments" and therefore "these opinions cannot be substantial evidence to support the ALJ's RFC assessment." (ECF No. 11 at 10.) Plaintiff cites no authority for this proposition and the argument is unpersuasive. Under current regulations,[5] specialization is one of the factors an ALJ is to consider when evaluating medical opinions. Specialization is the extent to which a "medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty." 20 C.F.R.

---

[5]     In 2017, the Social Security Administration ("SSA") promulgated new regulations, effective for claims filed on or after March 27, 2017, such as Plaintiff's. *See* 20 C.F.R. § 404.1520c; AR 10. These regulations alter the definition of "medical opinion" and the way that ALJs consider and articulate their consideration of medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(a)–(c). ALJs now consider the persuasiveness of medical opinions and prior administrative medical findings using five factors: (1) supportability; (2) consistency; (3) relationship with claimant; (4) specialization; and (5) other factors, such as the source's knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. 20 C.F.R. § 404.1520c(c).

§ 404.1520c(c)(4). Nothing in the regulations or the case law supports the proposition that an opinion cannot constitute substantial evidence merely because the specialization of the medical source is not directly related to the nature of the claimant's disability. While the regulations contemplate that the ALJ may consider the medical opinion of a source who is a specialist in the area related to the claimant's disability to be more persuasive than the opinion of a source that lacks such specialized training, in the instant case there *was* no medical source that assessed greater limitations than those assessed by Dr. Lee and Dr. Wong.

Plaintiff was required to establish both the medical need for a cane and the specific circumstances in which the cane is needed before the ALJ could include the usage of a cane in his RFC. Accordingly, the ALJ did not err because the evidence did not establish that Plaintiff's cane was medically required.

### C. Plaintiff's Mental RFC

As stated above, Plaintiff argues that the ALJ erred by not including any mental health limitations in his RFC assessment. (ECF No. 11 at 10–12.) To support this argument, Plaintiff relies upon *Hutton v. Astrue*, 491 Fed. App'x. 850 (9th Cir. 2012).[6] (*See id.* 11–12.) The Commissioner responds that the ALJ properly considered Plaintiff's mental impairments, and thus did not commit legal error. (ECF No. 13 at 25–29.)

In *Hutton*, the ALJ determined at step two that the claimant had a medically determinable mental impairment of PTSD, which caused "'mild' limitations in the area of concentration, persistence, or pace." *Hutton*, 491 Fed. App'x at 850. The Ninth Circuit observed that under the Regulations, all impairments must be considered—whether severe or not—in formulating the RFC, and explained:

> Regardless of its severity, however, the ALJ was still required to consider Hutton's PTSD when he determined Hutton's RFC. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable

---

[6] *Hutton* is an unpublished decision that is not binding on this Court. *See generally* Fed.R.App.P. 32.1.

> impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]'"). The ALJ, however, failed to do so. Instead, the ALJ discredited Hutton, his treating physicians' opinions, and the VA's disability rating. . . .
>
> [T]he ALJ then mischaracterized [] Hutton's testimony at least five times. Finally, the ALJ concluded that, based on Hutton's lack of credibility, his PTSD claims were in "great doubt." On that basis, the ALJ excluded Hutton's PTSD from consideration. This exclusion was legal error. To determine Hutton's RFC properly, the ALJ was required to consider Hutton's physical impairments and the "mild" limitations his PTSD caused with concentration, persistence, or pace, regardless of whether the ALJ doubted that they were caused by Hutton's ever-shifting military history. *See* 20 C.F.R. § 404.1545(a)(2). Further, while the ALJ was free to reject Hutton's testimony as not credible, there was no reason for the ALJ to disregard his own finding that Hutton's nonsevere PTSD caused some "mild" limitations in the areas of concentration, persistence, or pace.

*Id.* at 850–851. Therefore, the Court vacated the decision of the ALJ and remanded the action to an ALJ to reconsider the evidence. *Id.* at 850.

Following *Hutton*, numerous district courts in the Ninth Circuit, including this one, "found reversible error where the ALJ failed to at least consider mild mental limitations when assessing the claimant's RFC." *Patricia C. v. Saul*, No. 19-cv-00636-JM-JLB, 2020 WL 4596757, at *13 (S.D. Cal. Aug. 11, 2020), *adopted*, No. 19-cv-00636-JM-JLB, 2020 WL 5423887, at *1 (S.D. Cal. Sept. 10, 2020); *Gates v. Berryhill*, No. ED-CV-16-00049-AFM, 2017 WL 2174401, at *2 (C.D. Cal. May 16, 2017); *Smith v. Colvin*, No. 14-cv-05082-HSG, 2015 WL 9023486, at *8–9 (N.D. Cal. Dec. 16, 2015) ("The current record is unclear as to whether the ALJ properly considered the claimant's mild mental limitations when assessing her RFC"); *Kramer v. Astrue*, No. CV-12-5297-MLG, 2013 WL 256790, at *2–3 (C.D. Cal. Jan. 22, 2013). However, courts have determined *Hutton* is inapplicable where the record demonstrates that the ALJ considered a claimant's nonsevere mental impairments before concluding that they did not cause any significant limitation necessitating inclusion in the RFC. *Dimartini v. Colvin*, No. 15-cv-00997-GPC-JMA, 2016 WL 4142344, at *6 (S.D. Cal. Aug. 4, 2016); *see also Thompson v. Saul*, No. 18-cv-

00137-BAM, 2019 WL 3302471, at *7 (E.D. Cal. July 23, 2019); *see also Denney v. Saul*, No. 18-cv-00689-GSA, 2019 WL 4076717, at *6–8 (E.D. Cal. Aug. 28, 2019); *Malherek v. Comm'r of SSA*, No. CV-18-00409-TUC-CKJ-DTF, 2019 WL 5078223, *6–8 (D. Az. June 5, 2019); *Jones v. Berryhill*, No. ED-CV-17-1138-AS, 2018 WL 3956479, at *3 (C.D. Cal. Aug. 15, 2018).

Here, at step two of the Commissioner's five-step sequential evaluation process, the ALJ found mild mental limitations stemming from Plaintiff's history of a mood disorder, PTSD, and cannabis use disorder in two of the four broad functional areas: interacting with others, and concentrating, persisting or maintaining pace. (AR 15–16.) The ALJ indicated that in formulating the RFC, he considered "all symptoms" and "the entire record." (AR 17.) For example, the ALJ noted that Plaintiff reported "he did have problems getting along with family, friends, neighbors and others due to his PTSD. . . ." (AR 19.) However, the ALJ also noted that Plaintiff maintained a rather high-level of functioning in regard to his daily activities, such as being able to take his medications without reminders, performing personal hygiene, getting rides, driving a car or using public transportation if he needed to travel, attending church, taking care of his mother and grandmother, grocery shopping, and managing his personal finances. (AR 18–19.) The ALJ found these observations "consistent with [Plaintiff]'s ability to perform basic work tasks." (AR 19.) In addition, the ALJ also noted some of the inconsistencies in Plaintiff's reporting. For example, although Plaintiff "stated that he had been experiencing PTSD symptoms since 1988 . . . he did not seek any treatment until 2015. This would not be consistent with someone experiencing a disabling level of impairment due to PTSD." (AR 20.) Based on the foregoing, the record indicates the ALJ considered evidence related to Plaintiff's mental impairments after step two, including his activities of daily living and evidence concerning his ability to complete work tasks. Thus, the record does not support Plaintiff's assertion that the ALJ did not consider his nonsevere mental impairments in formulating the RFC. *See Denney v. Saul*, No. 18-cv-00689-GAS, 2019 WL 4076717, at *8 (E.D. Cal. Aug. 19,

2019) (finding no error where the ALJ discussed additional evidence related to the claimant's mental impairment after step two).

The ALJ made an affirmative finding that Plaintiff's mental impairment was nonsevere, which Plaintiff does not dispute. (ECF No. 11 at 10.) A fair reading of the ALJ's decision is that the omission of mental limitations from the RFC reflects the conclusion that the impairments would not interfere with the ability to perform basic work activities, which the ALJ reached at step four after considering Plaintiff's ability to complete tasks, the medical record, and Plaintiff's reported daily activities. (AR 18–20.) Consequently, the Court finds Plaintiff fails to show the ALJ did not adequately consider his mental impairments with the RFC. *See Denney*, 2019 WL 4076717, at *8; *Dray v. Astrue*, 353 Fed. App'x. 147, 150–51 (10th Cir. 2009) (evidence of mild mental impairments did not contradict ALJ's RFC determination omitting any limitations related to mental impairments).

Only limitations supported by substantial evidence must be included in questions presented to VEs. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). An ALJ need not include "any impairments that the ALJ has properly rejected." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). Thus, if an ALJ finds a mild mental impairment is adequately addressed in an RFC that omits mental limitations, the hypothetical questions posed to the VE need not include mental limitations. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001) (explaining it is "proper for an ALJ to limit a hypothetical" and finding the ALJ did not err by omitting any limitations for depression when questioning the VE where the record showed Osenbrock's "depression [was] a mild impairment, which presented no significant interference with the ability to perform basic work-related activities"); *Bias v. Astrue*, 484 Fed. App'x. 275, 276 (10th Cir. 2012) (when the ALJ finds there are no work-related limitations related to a nonsevere mental impairment, "the ALJ is not required to include that impairment in his hypothetical"). Because the ALJ determined Plaintiff's nonsevere PTSD and other mild limitations were not required in the RFC, the ALJ did not need to include mental limitations

in the hypothetical questions posed to the VE to determine Plaintiff's ability to perform work in the national economy. Plaintiff fails to show any reversible error on these grounds.

## VI. CONCLUSION

The ALJ's decision was supported by substantial evidence and was based on proper legal standards. Accordingly, for the reasons discussed above, the Court **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 11), **GRANTS** the Commissioner's Cross-Motion for Summary Judgment (ECF No. 13), and directs the Clerk to enter Judgment affirming the decision of the Commissioner, and dismissing this action with prejudice.

**IT IS SO ORDERED.**

Dated: September 9, 2022

*(signature)*
Hon. Jill L. Burkhardt
United States Magistrate Judge